IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLOOMSYBOX.COM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-844-RGA |
| | ) | |
| USERWAY, INC., JOHN DOE 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the court in this putative class action is defendant Userway, Inc.'s ("Defendant") motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (D.I. 26) Plaintiff Bloomsybox.com, LLC ("Plaintiff") asserts causes of action for: (1) breach of contract and breach of the implied covenant of good faith and fair dealing; (2) violation of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2511, *et seq.* ("DCFA"); (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); and (4) negligent misrepresentation. (D.I. 1 at ¶¶ 74-111) Defendant seeks dismissal of each of these counts. (D.I. 27) For the following reasons, I recommend that the court GRANT-IN-PART Defendant's motion to dismiss.

**I.     BACKGROUND**

Plaintiff operates an e-commerce website selling flowers and gifts, maintaining its principal offices in Kentucky and Florida. (D.I. 1 at ¶¶ 11, 48) Defendant sells a software product (the "Widget") on a subscription basis to remediate websites for compliance with legal

---

[1] The briefing and filings associated with the pending motion to dismiss are found at D.I. 27, D.I. 28, D.I. 29, and D.I. 30.

and regulatory standards under Title III of the Americans with Disabilities Act ("ADA"). (*Id.* at ¶¶ 1, 6, 12) Defendant claims that adding a single line of code to a website and installing its Widget will address accessibility problems, and its artificial intelligence will continue to scan the website and repair accessibility issues on an ongoing basis. (*Id.* at ¶ 26) Specifically, Defendant's Terms of Use ("TOU") state that Defendant "exerts commercial efforts to ensure that its Products enable Licensee's Website to become compliant with the WCAG 2.1 level AA success criteria[.]"[2] (*Id.* at ¶ 27; D.I. 27, Ex. 3 at 3)

Plaintiff bought a subscription for Defendant's Widget in July of 2023 to ensure that its website was accessible to individuals with vision, motor, cognitive, or hearing impairments in conformance with the ADA and the WCAG. (*Id.* at ¶¶ 3, 49-50, 53) Plaintiff avers that it selected the Widget after reviewing Defendant's website, which claimed that the Widget would ensure ADA compliance and shield Plaintiff from ADA lawsuits. The website also represented that Defendant would provide legal support if Plaintiff ever faced an ADA lawsuit. (*Id.* at ¶¶ 50-53) The complaint quotes the following representations from Defendant's website:

  a) "UserWay's solutions provide full WCAG & ADA compliance from day one, and every single day thereafter."

  b) On Unserway's Frequently Asked Questions page, the first question listed is "Does UserWay provide full ADA Compliance?["] As of October 2021, Userway gave the answer "Yes. UserWay's AI-Powered Accessibility Widget provides **full** ADA and WCAG 2.1 compliance for as little as $49/month. Our solution is unique in the industry as we don't require you to change your website's existing code in order to achieve compliance." (emphasis added)

---

[2] "WCAG" refers to the Web Content Accessibility Guidelines. According to the complaint,

> the WCAG standards and recommendations are commonly viewed as the industry standard for internet website compliance with the ADA. The WCAG is incorporated by reference in Section 508 of the Rehabilitation Act that governs Federal departments and agencies' use of electronic and information technology.

(D.I. 1 at ¶ 4)

    c) As of December 2023, Userway amended its FAQ to state: "Yes. UserWay's solutions ensure ADA, W[C]AG 2.1 and 2.2 compliance through our AI-Powered Accessibility Widget." This amended answer remains false.

    d) Userway's website currently represents that Userway's Accessibility Widget will make websites "conform to WCAG 2.1 & 2.2 and boost performance along the way."

    e) Under its pricing summary, Userway's website currently represents that in addition to a suite of AI-powered accessibility functions and customer support, all paid plans include "WCAG 2.1 AA, ADA, Section 508 compliance" and "Litigation protection + $10,000 commitment."

(*Id.* at ¶ 28) The complaint also includes a screenshot from Defendant's website representing that customers can "avoid lawsuits with only a single line of code" and offering "legal mitigation with a $1 million guarantee." (*Id.* at ¶ 38)

After paying the initial monthly fee, Plaintiff received a welcome packet via email that included representations about the Widget's ability to ensure ADA and WCAG compliance. (*Id.* at ¶ 54) Plaintiff also received a document representing that Defendant would provide up to one million dollars of coverage in the event of a lawsuit alleging a lack of ADA compliance. (*Id.*)

On December 11, 1013, Plaintiff was served with a notice of class action lawsuit for alleged noncompliance with ADA requirements on its website. (*Id.* at ¶ 56) Plaintiff contacted Defendant for assistance in responding to the class action complaint. (*Id.*) Defendant informed Plaintiff that legal support was not included at Plaintiff's monthly subscription level, and Plaintiff must purchase an annual subscription to obtain legal support. (*Id.*) After Plaintiff purchased the annual subscription, Defendant told Plaintiff it had opened a "ticket" regarding the legal action. (*Id.* at ¶ 57) Hours later, Defendant sent Plaintiff a "Legal Action Guide" which included generic information about the ADA and summarized the claims brought against Plaintiff in the lawsuit. (*Id.*) Defendant informed Plaintiff that it had "closed" the case on December 15, 2023. (*Id.* at ¶ 58)

Plaintiff retained an attorney to defend against the class action and settled the claim with a monetary payment months later. (*Id.* at ¶ 59)  On July 19, 2024, Plaintiff brought this putative class action against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, violations of the DCFA and MMWA, and negligent misrepresentation, alleging that it would not have purchased a subscription to Defendant's Widget if it had known the Widget was not effective in achieving conformance with ADA and WCAG standards. (*Id.* at ¶¶ 60, 74-111)

## II.   DISCUSSION

As a threshold matter, the court addresses whether and how it will review the exhibits attached to Defendant's motion to dismiss.  Generally, the court may not consider matters outside the pleadings when adjudicating a motion to dismiss under Rule 12(b)(6).  *See JPMorgan Chase Bank, Nat'l Ass'n v. Argus Information & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 375 (D. Del. 2025) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).  Defendant's motion to dismiss is accompanied by five exhibits which were not attached to the complaint.  (D.I. 27, Exs. A-E)  Plaintiff does not challenge the authenticity of two of these exhibits: (1) Defendant's Terms of Use ("TOU"), attached as Exhibit C to the opening brief, and (2) Plaintiff's answer filed in another civil action in the U.S. District Court for the Southern District of New York (the "SDNY Answer"), attached as Exhibit E to the opening brief.  (*Id.*, Exs. C, E; D.I. 28 at 4)  The TOU is incorporated into the complaint by reference, and the SDNY Answer is a matter of public record.  Therefore, the court may consider these exhibits without converting the motion to dismiss into a motion for summary judgment.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any

matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." (internal citations and quotation marks omitted)).

The court declines to consider the remaining exhibits because Plaintiff challenges their authenticity. (D.I. 28 at 4) "[I]t is well-established law that, under the Rule 12(b)(6) standard, 'a court may consider *an undisputedly authentic document* that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.' " *Valentine v. Midland Funding, LLC*, 2020 WL 7074352, at *3 (D.N.J. Dec. 3, 2020) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Exhibits A and B are printouts from Defendant's website as of February 21, 2025, the date the motion to dismiss was filed. (D.I. 27 at 3; Exs. A-B) The complaint contains quotations and captures of Defendant's website from various dates predating the initiation of this lawsuit on July 19, 2024. (D.I. 1 at ¶ 28) Defendant offers no legal basis to support the court's consideration of more recent website content that was not included in the complaint.[3] (D.I. 27 at 3)

---

[3] Defendant addresses Plaintiff's challenge to the authenticity of the exhibits in a footnote in its reply brief. (D.I. 29 at 5 n.1) The court "need not address arguments raised entirely in footnotes." *Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 268 n.11 (D. Del. 2019). Moreover, the argument is not persuasive. Defendant suggests that Plaintiff is required to offer a "particularized reason to suspect the materials are faulty or altered," and the court may consider website screenshots "if they are integral to the claims and their authenticity is not genuinely disputed." (D.I. 29 at 5 n.1) Defendant cites *U.S. Express Lines, Ltd. v. Higgins* in support of this assertion, but this case reiterates the general proposition that the court may consider "a document *integral to or explicitly relied* upon in the complaint" without converting the motion to dismiss into a motion for summary judgment. 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original) (internal quotations omitted). *Higgins* offers no commentary on the authenticity requirements for documents outside the pleadings at this stage of the case. The District of New Jersey's rejection of an authenticity challenge in *Hughes v. Kolaras* is inapposite. 2013 WL 5797735, at *6 (D.N.J. Oct. 28, 2013). There, the plaintiff challenged the authenticity of a contract even though her signature appeared on it. *Id.* Defendant cites no authority supporting its position that the authenticity of a website screen grab is comparable to a signed contract.

Exhibit D purports to be a Legal Action Guide that Defendant prepared for Plaintiff in response to litigation brought against Plaintiff. (*Id.*, Ex. D) The complaint alleges that Defendant opened a "ticket" and sent Plaintiff a Legal Action Guide after Plaintiff purchased an annual subscription to obtain legal support on December 11, 2023. (D.I. 1 at ¶ 57) The complaint further alleges that Defendant informed Plaintiff it had "closed" the case on December 15, 2023. (*Id.* at ¶ 58) It is not clear from these averments that the December 22, 2023 Legal Action Guide attached as Exhibit D to the motion to dismiss is the same version described in the complaint. (D.I. 27, Ex. D at 1) Thus, the court declines to consider the contested document at the pleading stage. *See Revers v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 2025 WL 81570, at *5 (W.D. Pa. Jan. 13, 2025) (describing the standard for assessing authenticity objections on a motion to dismiss as "lenient").

### A. Standing Under Rule 12(b)(1)

Constitutional standing "is properly tested under Rule 12(b)(1)" for lack of subject matter jurisdiction and "may be challenged facially or factually." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020). In this case, Defendant presents a facial challenge to Plaintiff's standing under the DCFA. (D.I. 27 at 7-9) "A facial challenge argues that the plaintiff's factual allegations cannot meet the elements of standing." *Id.* (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). For a facial challenge, the court applies the same standard that governs a Rule 12(b)(6) motion for failure to state a claim, accepting the plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024).

"To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018) (internal quotation marks and citations omitted). Here, Defendant contends that Plaintiff has not shown its injury was caused by Defendant's allegedly false advertising, noting that the dates of the false representations described in the complaint do not correspond to the date Plaintiff purchased the Widget. (D.I. 27 at 7-8) According to Defendant, Plaintiff could not suffer an injury from a misrepresentation it did not see. (*Id.* at 8-9)

Drawing all reasonable inferences in favor of Plaintiff, I recommend that the court DENY Defendant's motion to dismiss Plaintiff's DCFA claim for lack of standing. The complaint alleges that Plaintiff viewed Defendant's website before deciding to purchase a subscription to the Widget in July of 2023. (D.I. 1 at ¶¶ 50-53) According to the complaint, Defendant's website guaranteed full ADA and WCAG 2.1 compliance prior to Plaintiff's purchase, and it continued to represent that the Widget would ensure ADA and WCAG 2.1 compliance months after Plaintiff's purchase. (*Id.* at ¶ 28) Construing the complaint in the light most favorable to Plaintiff, it is reasonable to infer that Defendant's website made comparable representations in July of 2023, when Plaintiff purchased the Widget. *See Huertas*, 120 F.4th at 1174 (providing that the court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences allegations in favor of the plaintiff in response to a facial challenge to standing). The complaint plausibly alleges that Plaintiff decided to subscribe to the Widget after reviewing the representations on Defendant's website, and it suffered monetary damages as a

result of its reliance on those representations. (D.I. 1 at ¶¶ 50, 61) Thus, the standing requirements are met for purposes of Plaintiff's DCFA claim.

Defendant also contends that Plaintiff lacks standing to seek injunctive relief. (D.I. 27 at 19) The complaint requests injunctive relief "that will, at a minimum, make [class members] aware that the Userway subscription on which they have been relying is ineffective and that will provide effective solutions[.]" (D.I. 1 at ¶ 84) According to Defendant, Plaintiff knows the Widget cannot provide perfect ADA compliance or lawsuit prevention, and there is no plausible risk that Plaintiff will purchase the Widget again and sustain future injury. (D.I. 27 at 19-20)

Plaintiff does not argue that it is likely to purchase the Widget again. Instead, Plaintiff alleges that it may seek injunctive relief on behalf of class members to protect future customers from Defendant's misrepresentations. (D.I. 28 at 20) But the Third Circuit has held that a plaintiff does not have standing to seek injunctive relief when the pleaded allegations reveal the plaintiff's awareness of the defendant's practices. *See Thorne*, 980 F.3d at 896 (characterizing the plaintiff's request for injunctive relief as a "stop me before I buy again" claim that precludes Article III standing). Plaintiffs have not demonstrated a risk of actual or imminent injury to unidentified class members. *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). Consequently, I recommend that the court GRANT Defendant's motion to dismiss Plaintiff's claim for injunctive relief under Rule 12(b)(1).

### B. Failure to State a Claim Under Rule 12(b)(6)

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although

detailed factual allegations are not required, the complaint must set forth sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

### 1. Count I: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

To state a claim for breach of contract, the pleading must allege: (1) the existence of a contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) resultant damage. *Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 449 (D. Del. 2014) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). With

9

respect to the first element, the complaint alleges that, "[a]ccording to Userway, its [TOU] constitutes a binding contract with each user that govern[s] each subscriber's access and use of Userway's services." (D.I. 1 at ¶ 27) The complaint further states that "Plaintiff and each Class member subscribed to Userway services which, Userway states, are governed by the [TOU] it drafted as a binding contract." (*Id.* at ¶ 75) By qualifying the existence of a valid contract in this manner and conditioning it on Defendant's representations, Plaintiff does not plainly and directly plead that the first element is satisfied. Then, in its answering brief, Plaintiff argues at length that the TOU is an unenforceable "browsewrap" agreement because "[u]sers were not given a reasonable opportunity to review the [TOU] prior [to] having it imposed on them and did not manifest agreement to its terms."[4] (D.I. 28 at 13-15)

On this record, the complaint fails to plausibly allege the existence of a contract, which is an essential element to both the breach of contract claim and the claim for breach of the implied covenant of good faith and fair dealing.[5] *See Gary v. Deluxe Corp.*, C.A. No. 20-1632-RGA, 2022 WL 2817864, at *4 (D. Del. July 19, 2022). Consequently, I recommend that the court GRANT Defendant's motion to dismiss Count I of the complaint.

### 2. Count II: Violation of the Delaware Consumer Fraud Act ("DCFA")

The DCFA prohibits

> [t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others reply upon

---

[4] In its reply brief, Defendant recognizes Plaintiff's admission but argues that the breach of contract claim should be dismissed under principles of judicial estoppel. (D.I. 29 at 5) For the reasons set forth at Section II.B.2, *infra*, this is not a proper application of judicial estoppel.
[5] To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify: "(1) a specific implied contractual obligation; (2) a breach of the obligation by the defendant; and (3) resulting damage to the plaintiff." *Gary v. Deluxe Corp.*, C.A. No. 20-1632-RGA, 2022 WL 2817864, at *4 (D. Del. July 19, 2022) (internal quotation marks and citations omitted).

> such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby[.]

6 *Del. C.* § 2513. To state a claim under the DCFA, a plaintiff must allege "(1) a defendant engaged in conduct which violated the statute; (2) the plaintiff was a 'victim' of the unlawful conduct; and (3) a causal relationship exists between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms. LP*, 136 A.3d 688, 693 (Del. 2016). The DCFA differs from common law fraud claims in three respects: (1) a negligent misrepresentation is sufficient to violate the statute; (2) there is no requirement to show actual reliance by the plaintiff; and (3) the plaintiff need not show that defendant intended to induce action or inaction by the plaintiff. *See Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 438 (D. Del. 2007) (internal quotation marks and citations omitted).

As a preliminary matter, the parties dispute whether the heightened pleading standard of Rule 9(b) governs claims brought under the DCFA. (D.I. 28 at 7-8; D.I. 29 at 2) Plaintiff contends that Rule 9(b) does not apply because the Delaware Supreme Court has observed that "[t]he wording of § 2513 indicates that the legislature did not intend that the definition of unlawful practices would merely parallel common law fraud." (D.I. 28 at 7) (quoting *In re Brandywine Volkswagen, Ltd.*, 306 A.2d 24, 29 (Del. 1973)). But Plaintiff cites no authority establishing that Rule 9(b) is inapplicable because the DCFA encompasses a wider range of actions than a claim for common law fraud. Subsequent case authority confirms that "[c]laims under the [DCFA] must still be pleaded with particularity under Rule 9(b)" even though it is easier to establish a claim under the DCFA than it is to state a claim for common law fraud. *Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 207 (D. Del. 2022); *see Coleman*,

496 F. Supp. 2d at 439; *Christina Care Health Servs., Inc. v. PMSLIC Ins. Co.*, C.A. No. 14-1420-RGA, 2015 WL 6675537, at *2 (D. Del. Nov. 2, 2015). Thus, Plaintiff's cause of action under the DCFA is subject to the heightened pleading standard of Rule 9(b).

Defendant contends that the complaint fails to allege an actionable misrepresentation or a cognizable loss.[6] (D.I. 27 at 13) Plaintiff identified a list of alleged misrepresentations, and the complaint alleges facts connecting those misrepresentations to Plaintiff's purchase of the Widget and the resulting loss suffered by Plaintiff:

| MISREPRESENTATION | CAUSAL CONNECTION | LOSS |
|---|---|---|
| Defendant's website claimed the Widget is an effective alternative to manually remediating a website to meet WCAG 2.1 AA level standards and guarantee full ADA compliance. (D.I. 1 at ¶¶ 24, 26, 28(a)-(c)) | Plaintiff viewed Defendant's website and relied on its claims that the Widget would ensure WCAG and ADA compliance. Plaintiff would not have purchased a subscription but for these representations. (D.I. 1 at ¶¶ 50-51, 53, 60) | Plaintiff suffered damages in the amount of the price of the subscriptions, the cost of installing the Widget, and the cost of properly remediating the website. (D.I. 1 at ¶¶ 53, 55, 57, 61) |
| The TOU inaccurately represents that Defendant would use "commercial efforts" to "ensure" that its products enable websites to meet WCAG 2.1 level AA success criteria. (D.I. 1 at ¶¶ 33-36, 87-88) WCAG compliance requires manual testing, and Defendant performed no such testing. (*Id.* at ¶¶ 33-36) | The TOU was provided to each customer who subscribed to Defendant's Widget, and the representations therein were "fundamental" to Plaintiff's purchase. (D.I. 1 at ¶¶ 87, 89) | Plaintiff suffered damages in the amount of the price of the subscriptions, the cost of installing the Widget, and the cost of properly remediating the website. (D.I. 1 at ¶¶ 53, 55, 57, 61) |
| Claims that Defendant's Widget will reduce the risk of ADA-related lawsuits are false, and Defendant withheld material information regarding the frequency with which | Defendant's representations about the reduced risk of lawsuits and the offer of litigation support influenced Plaintiff's decision to purchase a subscription to the | Plaintiff suffered damages for the cost of defending against and resolving the litigation against it and suffered an increased risk |

---

[6] Defendant also emphasizes that the complaint does not allege Plaintiff saw the advertisements described in the pleading and therefore could not have relied on them. (D.I. 29 at 2-3) Under the DCFA, however, there is no requirement to show actual reliance by the plaintiff. *See Coleman*, 496 F. Supp. 2d at 438.

12

| customers were sued / the results of such litigation. (D.I. 1 at ¶¶ 39-46, 52, 90) | Widget. (D.I. 1 at ¶¶ 50-51, 53, 60) | of litigation. (D.I. 1 at ¶¶ 57, 61, 92) |
|---|---|---|
| Defendant misrepresented the litigation support it would provide, such as a $1 million guarantee, and its Legal Support Package provided no meaningful guidance. (D.I. 1 at ¶¶ 38, 47) | Defendant's representation about the offer of litigation support influenced Plaintiff's decision to purchase a subscription to the Widget. (D.I. 1 at ¶¶ 50-51, 53, 60) | Plaintiff suffered damages for the cost of defending against and resolving the litigation against it and suffered an increased risk of litigation. (D.I. 1 at ¶¶ 57, 61, 92) |

These allegations are sufficient to satisfy the heightened pleading standard of Rule 9(b), and the specificity and measurability of the misrepresentations goes beyond the aspirational language of non-actionable puffery. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945-46 (3d Cir. 1993). To the extent Defendant challenges the accuracy of the purported misrepresentations, those arguments are not persuasive because the court must assume the truth of the pleaded allegations at this stage.

Defendant contends that, even if the DCFA claim satisfies Rule 9(b), Plaintiff is judicially estopped from asserting these misrepresentations after filing an answer in the Southern District of New York alleging that its website complies with the relevant ADA accessibility standards. (D.I. 29 at 3-4; D.I. 27, Ex. E) But Defendant admits that Plaintiff "settled that lawsuit—without any judicial finding[.]" (D.I. 27 at 10 n.3) Defendant cites Third Circuit case authority confirming that judicial estoppel does not apply when no court accepted the positions taken in Plaintiff's answer:

> The Supreme Court has identified three factors that should inform a court's decision to invoke the doctrine: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire,* 532 U.S. at 750-51, 121 S.Ct. 1808. We have held that "[t]hree requirements must be met before a district court

may properly apply judicial estoppel." *Montrose Med. Group Participating Sav. Plan*, 243 F.3d at 779.

*Port Erie Plastics, Inc. v. Uptown Nails, LLC*, 173 F. App'x 123, 126 (3d Cir. 2006). "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal citations and quotation marks omitted). For these reasons, I recommend that the court DENY Defendant's motion to dismiss Count II of the complaint for violations of the DCFA.

### 3. Count III: Violation of the Magnuson-Moss Warranty Act ("MMWA")

The MMWA creates federal jurisdiction for breach of warranty claims brought by a putative class of consumers if certain prerequisites are met. 15 U.S.C. § 2310(d). Defendant alleges that Plaintiff's MMWA claim should be dismissed for failure to satisfy the statutory prerequisite of including at least one hundred named plaintiffs. (D.I. 27 at 16) (citing 15 U.S.C. § 2310(d)(3)(C)). Plaintiff does not deny that fewer than 100 plaintiffs are named. Instead, Plaintiff contends that because jurisdiction is proper under the CAFA, the court may hear the MMWA claim despite the lack of 100 named plaintiffs. (D.I. 28 at 17) Plaintiff supports its position by citing non-binding cases issued between 2006 and 2009.[7] (*Id.*)

---

[7] *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *5 (D.N.J. Mar. 31, 2008); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009); *Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006). In addition to ignoring Third Circuit precedent and case law from this district, Plaintiff fails to acknowledge that the Ninth Circuit's footnote in *Birdsong* was rejected in *Floyd v. American Honda Motor Co.*, which unequivocally held that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement[.]" 966 F.3d 1027, 1035 (9th Cir. 2020). The District of New Jersey has also adopted the approach taken in *Rowland* since the 2008 decision in *McCalley*. *See Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 WL 6890996, at *22 (D.N.J. Oct. 19, 2023).

Neither side refers to binding Third Circuit precedent directly addressing this issue and discrediting Plaintiff's position:

> The MMWA's stringent jurisdictional requirements are irreconcilable with CAFA. Specifically, the MMWA and CAFA have competing requirements for how many plaintiffs must be named in a class action that can be brought in federal court. While CAFA requires only a single named plaintiff to litigate on behalf of absent class members, 28 U.S.C. § 1332(d)(5)(B), the MMWA requires at least one hundred named plaintiffs, 15 U.S.C. § 2310(d)(3)(C). Allowing CAFA to govern MMWA class claims would undercut the MMWA's requirement and allow an MMWA class action to proceed in contravention of the MMWA. Because applying CAFA in this context would render the MMWA's named-plaintiff requirement meaningless, the presumption of diversity jurisdiction has been rebutted here. As a result, CAFA does not provide a basis for federal jurisdiction over MMWA class actions that do not satisfy the MMWA's jurisdictional requirements.

*Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023). Prior to *Rowland*, a case from this district similarly held that a plaintiff could not rely on the CAFA to avoid the 100-named-plaintiff requirement for a cause of action brought under the MMWA. *Talley v. Gen. Motors, LLC*, C.A. No. 20-1137-SB, 2021 WL 7209448, at *5-7 (D. Del. Nov. 26, 2021).

Because "MMWA claims can only be brought in federal court if the § 2310(d)(3) requirements are satisfied[,]" and because Plaintiff is 99 members short of 100, I recommend that the court GRANT Defendant's motion to dismiss Count III of the complaint. *Rowland*, 73 F.4th at 182; *see also Costa v. Whirlpool Corp.*, C.A. No. 24-188-MN, 2025 WL 885245, at *13 (D. Del. Mar. 21, 2025), *reargument denied*, C.A. No. 24-188-MN, 2025 WL 1433935 (D. Del. May 19, 2025). The court need not address Defendant's remaining arguments regarding Count III.

### 4. Count IV: Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must plead: (1) "a particular duty to provide accurate information, based on the plaintiff['s] pecuniary interest in that information;" (2) "the supplying of false information;" (3) "failure to exercise reasonable care in

15

obtaining or communicating information;" and (4) "a pecuniary loss caused by justifiable reliance on the false information." *Davis v. BAC Home Loans Servicing, L.P.*, C.A. No. 21-1713-CFC, 2022 WL 4535623, at *4 (D. Del. Sept. 28, 2022) (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003)).

Defendant contends that Plaintiff's negligent misrepresentation claim should be dismissed because it is barred by the economic loss doctrine, which precludes a recovery in tort for purely economic losses. (D.I. 27 at 17-18); *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185, 201 (D. Del. 2022). Plaintiff implicitly acknowledges that its losses are purely economic. Nonetheless, Plaintiff contends that the negligent misrepresentation claim should survive because the "false information" exception to the economic loss doctrine applies. (D.I. 28 at 18-19) This narrow exception is rooted in Section 552 of the Restatement (Second) of Torts, which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* The exception "allows tort claims against defendants (1) who have supplied information to the plaintiff for use in business transactions with third parties, and (2) who are in the business of supplying information." *RLI Ins. Co. v. Indian River Sch. Dist.*, 556 F. Supp. 2d 356, 360 (D. Del. 2008) (citations omitted).

The parties dispute whether Defendant is in the business of supplying information. To make this determination, the court must engage in a "case-specific inquiry" regarding "the nature of the information and its relationship to the kind of business conducted." *Id.* at 361. Consequently, "[d]ecisions as to whether a defendant falls within the exception to the economic

16

loss doctrine are typically made at summary judgment in Delaware[.]" *Del. Art Museum v. Ann Beha Architects, Inc.*, C.A. No. 06-481-GMS, 2007 WL 2601472, at *4 (D. Del. Sept. 11, 2007). The issue may be resolved on a motion to dismiss "when the complaint unambiguously places a defendant outside of the exception." *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 528 (D. Del. 2012).

Many of the cases addressing the exception focus on whether the defendant supplies a tangible product. *See id.* (citing cases). The applicability of the exception is not unambiguous where, as here, Defendant provides an intangible software product intended to render website content accessible, and the " 'end and aim' product of [Defendant's] work" is the provision of that software. *Del. Art Museum*, 2007 WL 2601472, at *2. Therefore, it is premature to reach a determination on the applicability of the economic loss doctrine.

Defendant also argues that the complaint fails to allege justifiable reliance on the purported misrepresentations because the integration clause in the TOU expressly forecloses extra-contractual misrepresentation claims. (D.I. 27 at 18) This argument is premised on the enforceability of the TOU. For the reasons stated at Section II.B.1, *supra*, this argument is not persuasive. Defendant does not otherwise challenge the sufficiency of the pleaded allegations with respect to Count IV. Consequently, I recommend that the court DENY Defendant's motion to dismiss Plaintiff's claim for negligent misrepresentation.

Finally, Defendant challenges Plaintiff's standing to assert a negligent misrepresentation claim on behalf of a nationwide class. (D.I. 27 at 19; D.I. 29 at 10) Defendant cites two cases from the District of New Jersey to support its position that this issue may be addressed on a motion to dismiss. (*Id.*) (citing *In re Insulin Pricing Litig.*, 2019 WL 643709, at *17 (D.N.J. 2019); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020)). Many

other cases from that district have concluded that "the inquiry of standing to pursue claims on behalf of absent class members of the nationwide class [is] premature and more appropriate for the class certification stage." *Adam v. Barone*, 2023 WL 3058724, at *6 (D.N.J. Apr. 24, 2023) (citing cases). Cases from this district have likewise declined to dismiss nationwide class allegations for lack of standing and deferred the inquiry until the class certification stage. *See Crowell v. FCA US LLC*, C.A. No. 23-13-MN, 2024 WL 4333088, at *12 (D. Del. Sept. 27, 2024) (citing cases). The court finds the latter authority more persuasive. Consequently, I recommend that the court DENY Defendant's motion to dismiss Count IV for lack of standing.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART Defendant's motion to dismiss (D.I. 26) as follows:

| CAUSE OF ACTION | RECOMMENDATION |
| --- | --- |
| Injunctive Relief | GRANT under Rule 12(b)(1) and DISMISS without prejudice |
| Count I: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing | GRANT under Rule 12(b)(6) and DISMISS without prejudice |
| Count II: DCFA | DENY under Rule 12(b)(1) DENY under Rule 12(b)(6) |
| Count III: MMWA | GRANT under Rule 12(b)(6) and DISMISS without prejudice |
| Count IV: Negligent Misrepresentation | DENY under Rule 12(b)(6) DENY motion to dismiss for lack of standing |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 13, 2026

Sherry R. Fallon
United States Magistrate Judge